# Northern Produce Exchange *v.* Crocker Grocery Company, Appellant.

*Contract—Sale—Affidavit of defense—Bad eggs.*

In an action to recover the price of eggs sold and delivered, an affidavit of defense is sufficient to prevent judgment which avers that the eggs were rotten and unfit for the market, with a detailed description of the bad condition of the eggs at the time of delivery.

Argued March 6, 1911. Appeal, No. 2, March T., 1911, by defendant, from order of C. P. Luzerne Co., June T., 1909, No. 177, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Northern Produce Exchange v. Crocker Grocery Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit to recover the purchase money for twenty-five crates of eggs.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*F. P. McGuigan*, with him *Thomas H. Atherton* and *Evan C. Jones*, for appellant.

*James L. Morris*, for appellee.

OPINION BY ORLADY, J., April 17, 1911:

This claim of $183.35, is founded on a telegraphic order sent December 21, 1908, by the defendant from Wilkes-Barre, Pa., to the plaintiff at Chicago, Ill., as follows: "Ship Tuesday, American Refrigerator Transit, 25 crates sleeve or sleigh." The affidavit specifically declares that sleeve or sleigh was a well-known trade term in the egg market, and as such known to the plaintiff, and meant eggs that were laid during the preceding month of April. Upon receipt of the eggs at Wilkes-Barre on December 31, the plaintiff was notified by letter that the accompanying draft would not be paid for the reason that the eggs were of a very poor quality and that they would be promptly candled so as to determine the extent of their deficiency. Upon examination it was found that of the whole number of eggs alleged to be shipped, six dozen were cracked; 208 dozen were black; two and one-half dozen were broken; seven and three-twelfths dozen were short, or lacking, making a total of 223¾ dozen of cracked, broken and short eggs. Others were all black, half black, black spotted and when broken showed spots; the yolk stuck fast to the shell, were quite reddish, more or less thick; had an offensive odor and were unfit for market. Two offers to return them were made and refused by the plaintiff. Payment of the bill was refused for the reason that the eggs were rotten and unfit for market.

The affidavit as a whole sets forth a sufficient defense to prevent a summary judgment. If the facts stated are true, and we are obliged to so consider them, the demand for payment was for goods so entirely different in quality, that it would be contrary to our law to sell them in market as well as so short in quantity, as to substantially affect the value of the consignment. The words used and necessary inference to be drawn from the facts stated clearly and unmistakenly mean this, as stated by Judge HEAD in United Oil Cloth Co. v. Dash, 32 Pa. Superior Ct. 155, the affidavit fairly disclosed a state of facts which ought to have carried the case to a jury for trial.

It has often been held that where an affidavit of defense in good faith and with reasonable certainty to a common intent sets forth a meritorious defense, nothing more can be required.

It was distinctly and unequivocally averred that the goods were "unfit for market," which should be taken to mean that they were without value on account of their deteriorated condition. In ordinary speech an egg of doubtful reputation is a bad egg, and a rotten egg is of no market value as an article of food, so that it is a reasonable implication that a large proportion of these eggs were presumably not used but were disposed of as worthless and were destroyed.

The judgment is reversed with a procedendo.